UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EDWARD M. PARTLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02272-JMS-DML |
| | ) | |
| LT. HILL, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

This action is based on Edward Partlow's allegations that Lieutenant Hill, an officer at Pendleton Correctional Facility, confined him for two days under inhumane conditions and without his medicine or cane. Lieutenant Hill seeks summary judgment on the affirmative defense that Mr. Partlow failed to exhaust administrative remedies before filing suit. Because the undisputed facts show that Mr. Partlow did not pursue the prison grievance process through its final stage, Lieutenant Hill's motion for summary judgment, dkt. [29], is **granted**, and this action is **dismissed without prejudice**.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.
### Prison Litigation Reform Act and Exhaustion of Administrative Remedies

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Lieutenant Hill faces the burden of establishing that "an administrative remedy was available and that [Mr. Partlow] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

### III.
### Factual Background

Because Lieutenant Hill has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

The Indiana Department of Correction (IDOC) maintains an Offender Grievance Process (OGP), which is an administrative remedy program designed to allow inmates "to express

complaints and topics of concern for the efficient and fair resolution of legitimate offender concerns." Dkt. 29-2 at § II. Inmates can use the OGP to resolve concerns about "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care or supervision within the" IDOC. *Id.* at § IV(A). Mr. Partlow's confinement under inhumane conditions and without his medication and cane were issues for which he could properly seek relief through the OGP.

To exhaust the OGP's remedies, an inmate must complete four steps.

First, the inmate must attempt to resolve his concern informally. *Id.* at § IV(1) (formal grievance must follow "unsuccessful attempts at informal resolutions").

Second, if the inmate is unable to achieve a satisfactory resolution informally, he must submit a formal grievance to the grievance specialist on State Form 45471. *Id.* at § X. The inmate must submit his formal grievance no later than ten business days from the date of the incident at issue. *Id.* If the grievance does not include all required information or meet the minimum standards for grievances, the grievance specialist may reject the grievance, return it to the inmate, and allow him to revise and resubmit the grievance within five business days. *Id.* at §§ X(A)–(B).  If the formal grievance meets the minimum standards set out in the OGP, the grievance specialist will investigate the matter and respond in writing. *Id.* at § X(C).

Third, if the inmate is unsatisfied with the grievance specialist's response, the inmate must appeal. *Id.* at § XI. The inmate completes State Form 45473, stating the reasons for his appeal, and submits it to the grievance specialist within five days of the formal grievance response. *Id.* "The appeal may contain additional facts or information regarding the original issue and may raise concerns regarding the response from the previous level, but it shall not raise new or unrelated

issues." *Id.* The grievance specialist forwards the appeal to the warden, who responds in writing within ten business days. *Id.*

Finally, if the inmate is unsatisfied with the warden's response, he must submit a final appeal to the IDOC's grievance manager. *Id.* at § XII. The inmate does not complete a separate form to submit his second-level appeal. Rather, he checks a box at the bottom of the original appeal form, returned by the warden, stating that he disagrees with the warden's decision, and submits it to the grievance specialist. *Id.* A second-level appeal must be submitted within five business days of the warden's response to the first-level appeal. *Id.*

Formal grievances, appeals, and responses are logged and tracked in an electronic database. Dkt. 29-1 at ¶¶ 3(b), 4, 19, 24.

Mr. Partlow was removed from his cell following a search and confined in the conditions giving rise to his complaint from February 17 until February 18 or 19, 2021. Dkt. 1 at ¶¶ 13, 21.

Mr. Partlow submitted a formal grievance dated February 18, 2021, and later assigned grievance number 123734. Dkt. 29-3 at 8. He did not complain of the conditions underlying this lawsuit in that grievance. Rather, Mr. Partlow asserted that the officers who searched his cell wrongly confiscated his legal papers. *Id.* The grievance specialist responded the next day, and Mr. Partlow submitted an appeal on February 22. *Id.* at 5–6. In his appeal, Mr. Partlow added that he was deprived of his hygiene products, cane, knee braces, and medicine for the two days. *Id.* at 5. The warden responded on March 24, 2021, that he agreed with the grievance specialist's denial. *Id.* at 3. Mr. Partlow never submitted a second-level appeal for grievance 123734.

Mr. Partlow submitted another formal grievance on February 22, 2021. Dkt. 29-4 at 2. This grievance complained that Mr. Partlow was deprived of his cane, knee braces, hygiene products, and medication on February 17; that he was being confined on an upstairs range even though he

had a bottom-range pass; that he had been deprived of his hygiene products or cane for several days; and that was not afforded a hearing before any of these actions were taken. *Id.* The grievance specialist rejected the grievance on March 9 because it contained "multiple issues/events and/or dates." *Id.* at 1; *see also* dkt. 29-2 at § X(A)(4) (A formal grievance must "relate to only one event or issue.").

Mr. Partlow submitted another formal grievance on February 22, which was later assigned grievance number 124440. Dkt. 29-5 at 2.  This grievance complains primarily that Mr. Partlow was prevented from calling into a family funeral following the search of his cell. *Id.* A note at the top of the grievance states, "Has not showered since 2-16-21." *Id.* The grievance specialist responded on March 10 and denied the grievance. *Id.* at 1. Mr. Partlow did not submit an appeal.

Mr. Partlow submitted a fourth formal grievance dated May 14, 2021. Dkt. 29-6 at 2. This grievance complained that Mr. Partlow's property was wrongly confiscated on February 17, that he was wrongly removed from his cell, that he was deprived of his cane and medication, that he was wrongly placed on an upper range, and that he was prevented from listening to the funeral. *Id.* The grievance specialist rejected the grievance on June 9, noting that it was late and sought relief not available through the OGP. *Id.* at 1. Mr. Partlow did not revise and resubmit this formal grievance.

## IV.
## Analysis

A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale,* 376 F.3d at 655 (quoting *Pozo,* 286 F.3d at 1025). Mr. Partlow submitted numerous grievances and appeals regarding his conditions of confinement and medical deprivations on February 17, 18, and 19, 2021. The undisputed record makes clear, however, that he did not submit them in the time and manner required by the OGP.

Mr. Partlow submitted a formal grievance on February 22 that complained of the issues he raises in this lawsuit—namely, his deprivation of cane and medicine and his confinement under inhumane conditions without hygiene products. Dkt. 29-4 at 2. However, Mr. Partlow raised other issues in that grievance, including his confinement to an upper range, and the grievance specialist permissibly rejected it for raising multiple issues. *Id.* at 1; *see also* dkt. 29-2 at § X(A)(4). The OGP allowed Mr. Partlow to revise and resubmit those concerns in separate grievances. *Id.* at § X(B). As discussed below, Mr. Partlow submitted other grievances, but he did not exhaust the process on any of them.

Mr. Partlow arguably raised the issues underlying this lawsuit in his appeal to grievance number 123734 and in formal grievance number 124440. Dkt. 29-3 at 5; dkt. 29-5 at 2. However, Mr. Partlow never submitted a second-level appeal to grievance number 123734 or any appeal at all to grievance number 124440.

Finally, Mr. Partlow's May 14 grievance referenced the issues he raises in this action, but he submitted it nearly three months after the incident and more than two months after his February 22 formal grievance was rejected. This was well past the deadlines to file a new formal grievance or revise and resubmit a rejected grievance. *See* dkt. 29-2 at §§ X(A)–(B) (ten business days to submit grievance; five business days to revise and resubmit rejected grievance).

Mr. Partlow responds that an exhibit to Lieutenant Hill's motion includes a statement from the "Superintendent" that "this concludes the grievance process," indicating that Mr. Partlow "had in fact exhausted his administrative remedies." Dkt. 38 at 1. The Court has not located this document in the record. Mr. Partlow has not cited it, and the Court declines to "scour every inch of the record" for it. *Grant*, 870 F.3d at 573–74.

Mr. Partlow states throughout his response that staff members at the prison constantly harass and retaliate against him. Dkt. 38. However, he does not specifically assert that their harassment and retaliation prevented him from filing the papers necessary (and in the time necessary) to exhaust the OGP in this case, such that the OGP's remedies were not actually available to him.

Lastly, Mr. Partlow states that he submitted multiple grievances or appeals to which he did not receive responses, suggesting that the prison staff rendered the process unavailable to him. But Lieutenant Hill presented specific evidence showing that Mr. Partlow's efforts to use the OGP did not exhaust the process. Mr. Partlow does not support his response with citations to any evidence; it is not made under oath; and it is too vague to support a factfinder in determining that he exhausted the OGP. Accordingly, there is no "genuine dispute" that requires an evidentiary hearing. *Anderson*, 477 U.S. at 248.

The undisputed record shows that Mr. Partlow did not exhaust the remedies available through the OGP, and summary judgment is therefore appropriate.

## V.
## Conclusion

Lieutenant Hill's motion for summary judgment, dkt. [29], is **granted**. This action is **dismissed without prejudice**. *See Ford v. Johnson*, 362 F.3d 395, 401 ("[I]f the prisoner does exhaust, but files suit early, then dismissal of the premature action may be followed by a new suit that unquestionably post-dates the administrative decision. . . . [T]herefore . . . *all* dismissals under § 1997e(a) should be without prejudice.") (emphasis in original). The **clerk is directed** to enter final judgment consistent with this entry and the screening entry, dkt. 13.

**IT IS SO ORDERED.**

Date: 10/18/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

8

Distribution:

EDWARD M. PARTLOW
110641
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Thomas Pratt
Office of Indiana Attorney General
Thomas.Pratt@atg.in.gov